UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SONIA E., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C21-5046-MLP <br><br> ORDER |

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in finding that her vision condition did not meet a listing, in assessing her residual functional capacity, and in finding her not disabled at step five. (Dkt. # 18 at 1.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II. BACKGROUND

Plaintiff was born in 1957, has a 10th grade education, and previously worked as a caregiver and grocery store deli worker. AR at 262. Plaintiff was last gainfully employed in May 2017. *Id.*

ORDER - 1

In September 2017, Plaintiff applied for benefits, alleging disability as of May 11, 2017. AR at 221-29. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 144-54, 161-67. After two different ALJs conducted hearings in June and October 2019 (*id*. at 51-92, 808-48), the second ALJ issued a decision finding Plaintiff not disabled. *Id.* at 34-44. As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. *Id*. at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 1.)

### III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.*

*Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV.   DISCUSSION

At step three, the ALJ considers whether one or more of a claimant's impairments meet or medically equal an impairment listed in Appendix 1 to Subpart P of the regulations. "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original; citations omitted).

Plaintiff bears the burden of proof at step three. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). A mere diagnosis does not suffice to establish disability. *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). "'[An impairment] must also have the *findings* shown in the Listing of that impairment.'" *Id*. at 1549-50 (quoting § 404.1525(d); emphasis added in *Key*). To meet a listing, an impairment "must meet *all* of the specified medical criteria." *Sullivan*, 493 U.S. at 530. "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment[.]" *Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999) (quoting § 404.1526(a)). *See also Sullivan*, 493 U.S. at 531 (to establish equivalency, claimant "must present medical findings equal in severity to *all* the criteria" for the listing).

A visual disorder meets Listing 2.02 if a claimant's vision in his or her better eye is 20/200 or worse, with correction. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.02. There are tests in the record indicating that both of Plaintiff's eyes had been subjectively measured to have listing-level vision loss. *See* AR at 677-82. The medical expert ("ME") acknowledged this testing at the hearing, but explained that the record does not establish an objective cause for the

ORDER - 3

subjective vision loss, and thus the vision testing conflicts with the objective evidence and cannot satisfy a listing. *See id*. at 60-69. The ME noted that Plaintiff's treating optometrist documented worsening vision in 2019 and he suspected that the vision loss was caused by temporal arteritis or active arteritis. *See id*. at 677. The ME emphasized that temporal arteritis was only suspected and not confirmed by objective evidence. *Id*. at 64. The ME indicated that certain testing could clarify the cause of Plaintiff's vision loss, although he believed the issues were sufficiently clear on the record before the ALJ. *Id*. at 66.

The parties agree that the record does not establish an objective cause of Plaintiff's subjective vision loss (dkt. # 19 at 4-5, dkt. # 22 at 5-6), which apparently increased in severity after Plaintiff's transient ischemic attack in the months immediately preceding the administrative hearings and the ALJ's decision, but the parties disagree about the impact of that lack of diagnosis. Plaintiff seems to argue that the lack of a diagnosis is irrelevant at step three (dkt. # 22 at 1-2), but fails to acknowledge that the listing requires not only vision testing demonstrating listing-level visual acuity loss, but also "documentation of the cause of the [visual acuity] loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.00(A)(4).

The Commissioner's argument is also problematic, however, because it (as well as the ALJ's decision) fails to account for the entire record. The Commissioner emphasizes that Plaintiff's treating ophthalmologist opined that Plaintiff's severe vision loss was not attributable to either Plaintiff's mild macular edema or macular degeneration (dkt. # 19 at 5 (citing AR at 648-56)), but the Commissioner fails to mention that the ophthalmologist also suggested in May 2019 that Plaintiff receive a follow-up vision test, possibly to determine whether the recent test reflected long-lasting deficits. *See id*. at 680. No such testing is in the record, although more recent evidence in the record indicates that Plaintiff was tested to determine whether her vision

ORDER - 4

loss was caused by optic nerve damage or brain damage. *Id*. at 708-28. The treatment notes indicate that one more test was going to be performed, but the results of that test are not in the record. *Id*. The most recent treatment notes in the record again reference the possibility of temporal arteritis, in the context of Plaintiff's emergency room visit for left-sided facial pain, and recommend that she follow up with her treating providers. *See id*. at 803-04. The Court's review of the record thus finds documentation of ongoing effort to determine the cause of Plaintiff's vision loss.

The ALJ's decision does not acknowledge these efforts, instead emphasizing Plaintiff's ophthalmologist's statement that Plaintiff's subjective vision loss was not attributable to certain conditions (AR at 40), without accounting for other evidence in the record indicating that Plaintiff's providers suspected that her vision loss (and facial pain) could be caused by another undiagnosed condition. *See id*. at 680, 803-04. By plucking one treatment note out of the context of the entire record, the ALJ implied that Plaintiff's ophthalmologist doubted the accuracy of her vision testing, but this suggestion is unreasonable in light of the entire record and therefore erroneous. *See Reddick v. Chater*, 157 F.3d 715,722-23 (9th Cir. 1998) ("In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports. His paraphrasing of record material is not entirely accurate regarding the content or tone of the record."). The ophthalmologist recommended further testing in order to determine the duration of the vision loss, without suggesting that the existing testing was unreliable or suspect, which undermines the ALJ's interpretation of the May 2019 vision testing.

Thus, the record indicates that further testing could reveal an objective basis for Plaintiff's subjective vision loss, but the ALJ failed to acknowledge these parts of the record. The ME identified certain tests that could establish the existence of conditions that could cause

ORDER - 5

Plaintiff's vision loss or clarify the extent of Plaintiff's limitations (AR at 64, 66), but he testified that the "issues are very clear" even without that testing. *Id*. at 66. The issues were clear in the sense that the record did not presently contain any evidence linking Plaintiff's subjective vision loss to an objective cause, but, as discussed herein, the record also contained other evidence that providers suspected a cause and needed to perform testing to confirm, which ultimately renders the cause of Plaintiff's vision loss to be ambiguous on the record before the ALJ.

This ambiguity triggered the ALJ's duty to further develop the record. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (holding that "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"). The Court concludes that the ALJ's step-three findings as well as the ALJ's assessment of Plaintiff's testimony (AR at 40) fail to account for the entire record in context, and fail to comply with the ALJ's "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). This case must be remanded for further development of the record, and thus the Court need not address Plaintiff's remaining assignments of error.

## V.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should update the medical record, determine whether Plaintiff's providers have discerned a cause for Plaintiff's vision loss, and, if necessary, obtain testing to further clarify the cause and extent of Plaintiff's vision loss. In light of that updated record, the ALJ should reconsider any part of the decision as necessary.

Dated this 20th day of January, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 7